1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF HAWAII

3

   UNITED STATES OF AMERICA,      ) CRIMINAL NO. 19-00162JMS
4                                 )
              Plaintiff,          ) Honolulu, Hawaii
5                                 ) December 16, 2019
         vs.                      )
6                                 )
   (1) MONSANTO COMPANY,          ) INITIAL APPEARANCE
7                                 ) WAIVER OF INDICTMENT
              Defendant.          ) ARRAIGNMENT AND PLEA TO THE
8    _____) FELONY INFORMATION

9

                      TRANSCRIPT OF PROCEEDINGS
10         BEFORE THE HONORABLE J. MICHAEL SEABRIGHT
              CHIEF UNITED STATES DISTRICT JUDGE
11

   APPEARANCES:
12

   For the Government:      DENNIS MITCHELL, ESQ.
13                          MARK A. WILLIAMS, ESQ.
                            U.S. Attorney's Office - Central
14                           District of California
                            1300 United States Courthouse
15                          312 North Spring Street
                            Los Angeles, California  90012
16

17 For the Defendant:       WILLIAM M. HARSTAD, ESQ.
                            Carlsmith Ball LLP
18                          1001 Bishop Street, Suite 2100
                            Honolulu, Hawaii  96813
19

20                          ALICE S. FISHER, ESQ.
                            Latham & Watkins LLP
21                          555 Eleventh Ave., NW, Suite 1000
                            Washington, D.C.  20004
22

23 Also Present:           Mary M. Shaffer
                            Monsanto Company Representative
24

25

1

2

3     Official Court            Cynthia Fazio, RMR, CRR, CRC
      Reporter:                 United States District Court
4                               300 Ala Moana Blvd., C-270
                                Honolulu, Hawaii  96850
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

      Proceedings recorded by machine shorthand, transcript produced
25    with computer-aided transcription (CAT).

```
 1   MONDAY, DECEMBER 16, 2019                           3:00 P.M.

 2            THE COURTROOM MANAGER:  Criminal Number 00162JMS,

 3   United States of America versus Monsanto Company.

 4            This case has been called for an initial appearance,

 5   waiver of indictment, and arraignment and plea to the felony

 6   information.

 7            Counsel, please make your appearance for the record.

 8            MR. WILLIAMS:  Good afternoon, Your Honor.  Mark

 9   Williams and Dennis Mitchell appearing as special attorneys on

10   behalf of the United States.  Also with us in the courtroom

11   here are EPA CID Special Agents Kahakui and Yukumoto.

12            THE COURT:  Welcome and aloha.

13            MR. HARSTAD:  Good afternoon, Your Honor.  William

14   Harstad on behalf of defendant Monsanto Company.  Also

15   appearing with me today are Alice Fisher of Latham & Watkins

16   who is admitted pro hac vice.  And I have here Mary Shaffer who

17   is the head of HSC and real estate law for CropScience who's

18   been designated the company representative of Monsanto Company.

19            THE COURT:  Okay.  Thank you.  Good afternoon to all

20   of you and welcome to Honolulu.  And please be seated.

21            So I want to cover a few things just to make sure I

22   fully understand what's expected to happen today.  I have to

23   say, I've never seen a deferred prosecution agreement, a DPA,

24   coupled with a plea agreement quite the way this one is.  And

25   so I want to make sure my expectations as to what I'm supposed
```

1   to cover today and your expectation match up.  And we can have

2   that discussion initially and then we can go forward from

3   there.

4           So normally, of course, for a DPA my role is quite

5   limited to finding cause to toll time under the Speedy Trial

6   Act, to make sure that there isn't some sort of subterfuge in

7   tolling time.  That in fact there is a good faith, valid DPA

8   such that tolling time is appropriate.  At least that's my

9   understanding.  I did a little research on that and that seems

10  to be where the Second Circuit, the D.C. Circuit have come out.

11          What's just different in this case is, for instance,

12  the tie-in to the DPA and the plea agreement.  I don't know if

13  these are common or not, I have not seen it before and so --

14  but I still think my role isn't that different, that is that

15  I'll take the plea to Count 3 by Ms. Shaffer -- Shaffer?

16          MS. SHAFFER:  Shaffer.

17          THE COURT:  Shaffer.  I'll take the plea to Count 3,

18  make the findings as are necessary.  I think you folks want to

19  go to sentencing today, is that accurate or is that not

20  accurate?

21          MR. HARSTAD:  Monsanto would request that we do.  My

22  understanding is that there is no objection from the

23  government.

24          THE COURT:  Okay.  We'll take that up.  That's my

25  understanding is there is that suggestion at least and I'll

1    certainly hear from everyone on that.  And either I sentence

2    today or a presentence report or abbreviated one, whatever the

3    case may be, and we have sentencing.

4          I don't think I need to, though, accept, despite my EO

5    earlier, accept the deferred prosecution agreement or otherwise

6    endorse it in any way beyond that, even though these are tied

7    together from your folks' perspective.  Does everyone agree

8    with that as a process we're following here today?

9          MR. WILLIAMS:  That's correct from the government's

10   perspective, Your Honor.  Yes.

11         THE COURT:  Okay.

12         MR. HARSTAD:  That's our understanding as well, Your

13   Honor.

14         THE COURT:  Okay.  All right.  So, I'm going to take

15   the plea of guilty to Count 3 and then -- and then we'll go

16   from there.

17         I do see a waiver of indictment.  Is Count 3 a felony

18   or is it a misdemeanor?

19         MR. WILLIAMS:  Your Honor, Count 3 is a misdemeanor,

20   but Counts 1 and 2 are felonies.  So the waiver of indictment

21   was submitted as part of that -- that whole package as to the

22   information since it's got two felonies and a misdemeanor.

23         THE COURT:  Okay.  So you want me to essentially do a

24   plea of guilty as to Count 3 and an arraignment on Counts 1 and

25   2, including the waiver of indictment?

1           MR. WILLIAMS:  Yes, Your Honor.

2           THE COURT:  Counts 1 and 2 I should say.

3           MR. WILLIAMS:  Exactly, Your Honor.  Yes.

4           THE COURT:  Is that right?

5           MR. WILLIAMS:  Correct.

6           THE COURT:  All right.  All right.  And then I have

7    received Document 13, which is the Lodging of Certificate of

8    Authorization on Behalf of Monsanto.  I have reviewed that

9    regarding Ms. Shaffer's ability to enter the plea and be here

10   for the arraignment as to Counts 1 and 2.  That is the plea as

11   to Count 3.  It appears to be in order from my perspective, but

12   I just want to make sure the government is in agreement with

13   that and has no --

14           MR. WILLIAMS:  It looks fine from our perspective too,

15   Your Honor.

16           THE COURT:  All right.  Mr. Harstad, I assume you

17   agree with that?

18           MR. HARSTAD:  Yes, Your Honor.  Thank you.

19           THE COURT:  All right.  Just checking off items here.

20   All right.

21           I did just have one question though for clarification

22   to make sure there's no question, and this deals with the

23   language in the DPA.  It says a total fine of 6 million.  I

24   assume that's 5.8 under the DPA and two under the plea

25   agreement for a total of six, or is it six plus two?

```
 1                MR. WILLIAMS:  It's 6 million under the DPA, Your
 2     Honor, plus an additional 200,000 under the plea agreement.
 3                THE COURT:  All right.  I read it wrong then.  So I'm
 4     glad I asked for that clarification.  And that's your
 5     understanding as well?
 6                MR. HARSTAD:  Yes, Your Honor.
 7                THE COURT:  Okay.  So the total monetary out-of-pocket
 8     would be 10.2 altogether?
 9                MR. WILLIAMS:  10.2 plus the special assessment, Your
10     Honor.
11                THE COURT:  10.2 plus $125.
12                MR. WILLIAMS:  That's correct.  Yes.
13                THE COURT:  Okay.  All right.
14                MR. HARSTAD:  And I brought the check, Your Honor.  It
15     wasn't clear between us who the special assessment should be
16     made out to.  So I have a blank check for $125, which my firm
17     tells me is not best practices, but I was hoping we could clear
18     that up.
19                THE COURT:  It should go to the Clerk of Court,
20     shouldn't it?
21                MR. WILLIAMS:  In our district that's correct, Your
22     Honor.
23                THE COURT:  Renee, do you know offhand?
24                THE COURTROOM MANAGER:  Yes, Your Honor.
25                THE COURT:  Clerk of Court?
```

1                    THE COURTROOM MANAGER:  Yes.

2                    MR. HARSTAD:  Clerk of Court?  We will do so, Your

3     Honor.

4                    THE COURT:  You can say Clerk of Court, District of

5     Hawaii?

6                    Renee, do you know what it should say?

7                    THE COURTROOM MANAGER:  I can ask.

8                    THE COURT:  Okay.  We'll ask and get specific

9     information.

10                    All right.  So, Ms. Shaffer, I understand that on

11     behalf of Monsanto you wish to enter a plea of guilty to Count

12     3 of the information and to waive indictment as to Counts 1 and

13     2; is that accurate?

14                    MS. SHAFFER:  That's accurate, Your Honor.

15                    THE COURT:  Okay.  I'm going to have you approach the

16     lectern then with counsel, I don't know if both or whoever is

17     going to take the lead here.  Is that you, Mr. Harstad?

18                    MR. HARSTAD:  I believe so.

19                    THE COURT:  Okay.  Come on up then.  All right.

20                    All right, ma'am, so before I can accept your plea on

21     behalf of Monsanto Company there are a number of questions I

22     need to ask you to make certain that the plea is valid and

23     voluntary as well as the waiver of indictment as to Counts 1

24     and 2.

25                    And for the record, when I'm talking about plea I'm

1   talking about Count 3.  When I'm talking about waiver of

2   indictment, I'm talking about Counts 1 and 2.

3          If you don't understand any of my questions at any

4   point in time, it's real important that you ask me to repeat

5   the question or rephrase the question and I'll be happy to do

6   so.  Because otherwise the record will appear as if you

7   understood the question even if you don't.  Okay?

8          MS. SHAFFER:  Thank you, Your Honor.

9          THE COURT:  And should you wish to consult with

10  Mr. Harstad or Ms. Fisher in private at any point in time, all

11  you have to do is ask me and I'll be happy to let you do that,

12  just, you know, on the side over there or if more time is

13  needed I can go back to my office.  Okay?

14         MS. SHAFFER:  Yes.

15         THE COURT:  All right.  Can we swear the defendant?

16         (The Defendant was sworn to answer truthfully.)

17         THE COURT:  All right, so for the record, can you

18  state your full name?

19         MS. SHAFFER:  Mary Morrison Shaffer.

20         THE COURT:  And, Ms. Shaffer, are you the person

21  designated -- the same Mary Shaffer designated by Monsanto

22  Company in the Certificate of Authorization, Document 13,

23  ECF 13, who is authorized to take the actions specified in both

24  the plea agreement and the deferred prosecution agreement --

25         MS. SHAFFER:  I am.

1          THE COURT:  -- specifically to enter a plea of guilty

2    to Count 3 and to waive indictment as to Counts 1 and 2?

3          MS. SHAFFER:  I am, Your Honor.

4          THE COURT:  Okay.  And you are satisfied that that

5    authorization has been complied with in all legal respects?

6          MS. SHAFFER:  Yes.

7          THE COURT:  All right.  All right.  Do you understand

8    you are now under oath and if you answer any of my questions

9    falsely, those false answers could be used against you in a

10   separate prosecution for perjury or making a false statement?

11         MS. SHAFFER:  I do.

12         THE COURT:  How old are you?

13         MS. SHAFFER:  56.

14         THE COURT:  How far did you go in school?

15         MS. SHAFFER:  Through law school.

16         THE COURT:  Okay.  And English is your first language?

17         MS. SHAFFER:  It is.

18         THE COURT:  All right.  And where do you work at the

19   present time?

20         MS. SHAFFER:  I work at Bayer, Bayer U.S., LLC is my

21   employer.

22         THE COURT:  Okay.  And is Bayer a subsidiary of

23   Monsanto or what is the relationship?

24         MS. SHAFFER:  Monsanto Company and Bayer U.S., LLC are

25   affiliates.  We are both wholly owned subsidiaries of Bayer AG.

```
 1              THE COURT:  Okay.  All right.  And how long have you
 2    been employed by Bayer and/or Monsanto?
 3              MS. SHAFFER:  Bayer for 13 months.  Monsanto for the
 4    19 years before that.
 5              THE COURT:  All right.  And what is your present
 6    position at Bayer?
 7              MS. SHAFFER:  Head of HSE and real estate law for
 8    CropScience.
 9              THE COURT:  HSE?
10              MS. SHAFFER:  Health, safety and environment.
11              THE COURT:  All right.  Thank you.  Now, have you had
12    any alcohol in the last 24 hours?
13              MS. SHAFFER:  At dinner I had a glass of wine last
14    night.
15              THE COURT:  Okay.  Last night.  Okay.  Have you had
16    any alcohol today?
17              MS. SHAFFER:  No, I have not.
18              THE COURT:  Have you taken any illegal drugs in the
19    last 48 hours?
20              MS. SHAFFER:  No, I have not.
21              THE COURT:  Have you taken any prescription drugs in
22    the last 48 hours that impacts your ability to think clearly in
23    any way?
24              MS. SHAFFER:  No, I have not.
25              THE COURT:  All right.  So you're thinking clearly
```

1    here today?

2            MS. SHAFFER:  I am.

3            THE COURT:  Have you ever been treated for mental

4    illness or addiction to drugs or alcohol?

5            MS. SHAFFER:  No.

6            THE COURT:  Okay.  Tell me in your own words why

7    you're here today.

8            MS. SHAFFER:  I'm here to represent the company in

9    this proceeding and to plead guilty to the third count in the

10   information.

11           THE COURT:  All right.  Now, have you and Monsanto's

12   officers had enough time to talk about the facts underlying

13   this case, what your various options are and the decision to

14   plead guilty to Count 3?

15           MS. SHAFFER:  We have, Your Honor.

16           THE COURT:  Okay.  Are you fully satisfied with the

17   representation of your attorneys, that is Mr. Harstad and

18   Ms. Fisher, in relation to this matter?

19           MS. SHAFFER:  I am.

20           THE COURT:  Has anyone made any promise or assurance

21   to you or to your knowledge anyone at Monsanto of any kind in

22   an effort to plead guilty other than what is specifically in

23   the plea agreement or the deferred prosecution agreement?

24           MS. SHAFFER:  Your question -- sorry, that was long.

25           THE COURT:  Yeah.  I'm trying to make sure that

1    there's no sort of outside influence.

2           MS. SHAFFER:  Oh, no, there is no outside influence.

3    I am not aware of any.

4           THE COURT:  Has anyone made any promise or assurance

5    other than what's in the plea agreement or the DPA?

6           MS. SHAFFER:  No, Your Honor.

7           THE COURT:  To induce Monsanto to plead guilty?

8           MS. SHAFFER:  No, Your Honor.

9           THE COURT:  Okay.  From your understanding and

10   discussions with those at Monsanto, officers at Monsanto, is

11   this plea willing and voluntary and not based on any force or

12   threat?

13          MS. SHAFFER:  Yes.

14          THE COURT:  Okay.  So let me ask you, Mr. Harstad, do

15   you have any reason to doubt Ms. Shaffer's competence to enter

16   a valid and voluntary plea on behalf of Monsanto in this case?

17          MR. HARSTAD:  I do not, Your Honor.

18          THE COURT:  All right.  So let's look at the

19   information.  Let's start there and let's go ahead and do the

20   waiver as to Counts 1 and 2.

21          So Count 1 charges that beginning on or before

22   January 1st of 2014, and continuing to on or about

23   September 17th of 2014, in the District of Hawaii, and

24   specifically Maui County, Monsanto knowingly stored acute

25   hazardous waste, namely, more than one kilogram of methyl

1    parathion, also known as Penncap-M, with the premises being

2    described as 1351 Mauna Loa Highway, actually on Molokai, on

3    the island of Molokai, without a permit under Title 42, United

4    States Code, Chapter 82, Subchapter III or pursuant to Title I

5    of the Marine Protection, Research, and Sanctuaries Act, all in

6    violation of Title 42 U.S.C. Section 6928(d)(2)(A).  Do you

7    understand that charge?

8            MS. SHAFFER:  I do understand it.

9            THE COURT:  Do you have any questions for me or your

10   counsel regarding that charge?

11           MS. SHAFFER:  No, I do not.

12           THE COURT:  All right.  And Count 2 is the same

13   statutory framework and it charges from on or before

14   January 1st of 2014, and continuing to on or about October 21,

15   2014, again in Maui County, Monsanto, -- defendant Monsanto

16   Company knowingly stored the same substance, that is Penncap-M,

17   on a premises known as Valley Farm located on Maui Veterans

18   Highway in Kihei, Hawaii.  Do you understand that charge as

19   well?

20           MS. SHAFFER:  I do, Your Honor.

21           THE COURT:  All right.  So let me ask the government.

22   What are the maximum penalties for Counts 1 and 2?

23           MR. WILLIAMS:  Yes, Your Honor.  The statutory maximum

24   penalties -- just give me one moment.

25           The statutory maximum penalties the Court can impose

1    for Counts 1 and 2, which are felony violations of the Resource
2    Conservation and Recovery Act is five years of probation, a
3    fine of the greater of either $500,000 or twice the gross gain
4    or gross loss resulting from the offense, whichever is
5    greatest, or 50,000 per day for each violation, and mandatory
6    special assessment of $400.
7         So for both counts together, Your Honor, the total
8    maximum sentence for Counts 1 and 2 of the information would be
9    five years probation, a fine of the greater of $1 million, or
10   twice the gross gain or gross loss resulting from the offense,
11   whichever is greatest, or 100,000 for each day of violation,
12   and a mandatory special assessment of $800.
13        THE COURT:  All right.  Do you agree with that,
14   Mr. Harstad?
15        MR. HARSTAD:  Yes, Your Honor.
16        THE COURT:  Okay.  So, Mr. Shaffer, what I want to
17   make sure you understand is, Counts 1 and 2 in this information
18   are felonies, Count 3 is a misdemeanor, you understand that?
19        MS. SHAFFER:  I do understand that.
20        THE COURT:  Okay.  And do you understand that Monsanto
21   would have a constitutional right to be charged by a grand jury
22   as it relates to any felony, that is Counts 1 and 2, but that
23   Monsanto can waive that right through you and your
24   authorization, and consent to being charged by information for
25   the two felonies set forth in this document, that is Counts 1

1    and 2; do you understand that?

2           MS. SHAFFER:  I do.

3           THE COURT:  Unless Monsanto waives indictment, it

4    cannot be charged with a felony offense unless a grand jury

5    determines that there is probable cause to believe that a

6    federal crime was committed and that Monsanto committed that

7    crime.

8           Now, a grand jury is a body of at least 16 but not

9    more than 23 impartial citizens.  So to have a quorum you have

10   to have 16, there's never more than 23.  If Monsanto does not

11   waive indictment, again, through the authorization granted you,

12   the United States could present evidence to the grand jury and

13   then the grand jury would vote in private to determine, again,

14   if there's probable cause to believe that Monsanto committed a

15   federal offense, if at least 12 grand jurors, regardless of how

16   many are present, between 16 and 23, if at least 12 so find

17   then the grand jury would return an indictment.  If 12 do not,

18   then the grand jury would not return an indictment.  In other

19   words, the grand jury may or may not indict Monsanto; do you

20   understand that?

21          MS. SHAFFER:  I do.

22          THE COURT:  And do you understand if on behalf of

23   Monsanto you waive indictment, the information will be treated,

24   the two felony counts, exactly the same as an indictment for

25   all respects going forward; do you understand that?

1          MS. SHAFFER:  I do.

2          THE COURT:  And you've discussed this with the

3    appropriate officers at Monsanto?

4          MS. SHAFFER:  I have.

5          THE COURT:  And there is an agreement to waive

6    indictment in this case and to proceed for purposes of the DPA

7    with Counts 1 and 2 by way of information; is that accurate?

8          MS. SHAFFER:  Yes.  Yes.

9          THE COURT:  All right.  Do you have any questions

10   regarding those rights?

11         MS. SHAFFER:  No, I don't.

12         THE COURT:  Understanding those rights, is it still

13   Monsanto's decision to waive indictment and proceed by way of

14   information?

15         MS. SHAFFER:  It is, Your Honor.

16         THE COURT:  All right.  And I have before me a waiver

17   of indictment form and it appears to have your signature on it,

18   as well as Ms. Fisher's signature on it.  I don't know if you

19   can see that, but is that the document that you signed?

20         MS. SHAFFER:  It is.

21         THE COURT:  And that's your signature?

22         MS. SHAFFER:  Yes, it is.

23         THE COURT:  That's your signature, Ms. Fisher?

24         MS. FISHER:  Yes, sir.

25         THE COURT:  All right.  So I will execute the waiver

1    of indictment and agree there's a knowing and voluntary waiver

2    as to Counts 1 and 2 and have the waiver filed.

3              All right.  So Count 3 then, what we're going forward

4    with the plea, the misdemeanor, is a different charge.  Count 3

5    charges on or about July 15th of 2014, in Maui County, again

6    within the District of Hawaii, defendant Monsanto, a commercial

7    applicator, knowingly sprayed methyl parathion, also known as

8    Penncap-M, a restricted use pesticide that was banned pursuant

9    to a cancellation order issued by the Environmental Protection

10   Agency on corn seed and research crops on the premises known as

11   Valley Farm located on Maui Veterans Highway in Kihei, Hawaii,

12   on the island of Maui, in violation of Title 7, United States

13   Code, Sections 136j(a)(2)(K) and 136l(b)(1)(B).  Do you

14   understand that charge?

15             MS. SHAFFER:  I do.

16             THE COURT:  Do you have any questions for me or your

17   counsel regarding that charge?

18             MS. SHAFFER:  No, sir.

19             THE COURT:  All right.  And, Mr. Mitchell, you want to

20   put the maximum penalties as to that charge on the record?

21             MR. MITCHELL:  Certainly.  Your Honor, the Monsanto

22   Company should understand that the statutory maximum sentence

23   that the Court can impose for a violation of Title 7, United

24   States Code, Sections 136j(a)(2)(K) and 136l(b)(1)(B) is a

25   five-year period of probation, a fine of $200,000 or twice the

1    gross gain or gross loss resulting from the offense, whichever

2    is greatest, and a mandatory special assessment of $125.

3                THE COURT:  All right.  Mr. Harstad, do you agree?

4                MR. HARSTAD:  Agreed, Your Honor.

5                THE COURT:  All right.  Ms. Shaffer, do you understand

6    that?

7                MS. SHAFFER:  I do understand it.

8                THE COURT:  Do you have any questions about that?

9                MS. SHAFFER:  No, sir.

10               THE COURT:  Okay.  All right.  Now, Monsanto has

11   entered into a written plea agreement, and I'm not talking

12   about the DPA now, I'm talking about the plea agreement with

13   the United States; is that accurate?

14               MS. SHAFFER:  It is, Your Honor.

15               THE COURT:  And this is an 11(c)(1)(C) plea agreement,

16   correct?

17               Ms. Shaffer, do you understand what that means?

18               MS. SHAFFER:  Yes, Your Honor.  It is.

19               THE COURT:  Okay.  All right.  And did you read that

20   entire document?

21               MS. SHAFFER:  I did.

22               THE COURT:  After you read it, did you have a chance

23   to discuss it, whether with Mr. Harstad or Ms. Fisher, and have

24   any questions you may have had, or others at Monsanto may have

25   had regarding the terms of the plea agreement?

1          MS. SHAFFER:  I did have that opportunity and I don't
2   have any more questions.
3          THE COURT:  Okay.  So is it fair to say you understand
4   all the terms of the plea agreement?
5          MS. SHAFFER:  Yes, I do.
6          THE COURT:  And all those terms have been accepted and
7   agreed to by Monsanto and those in a position to make those
8   decisions; is that --
9          MS. SHAFFER:  Yes, they have been.
10          THE COURT:  All right.  So as you stand here now you
11   understand all the terms of the plea agreement; is that fair?
12          MS. SHAFFER:  I do.
13          THE COURT:  Okay.  Now, does this plea agreement along
14   with the DPA reflect the entire agreement between Monsanto and
15   the United States?
16          MS. SHAFFER:  It does.
17          THE COURT:  There's no side agreements, no oral
18   agreements, no other agreements?
19          MS. SHAFFER:  There are not, Your Honor.
20          THE COURT:  Okay.  Now, I'm sure you understand that I
21   am not required to accept this plea agreement as an
22   11(c)(1)(C), but if I reject it that would give the parties an
23   opportunity to reject it as well; do you understand that?
24          MS. SHAFFER:  I understand that.
25          THE COURT:  All right.  So let me turn to the

1   government and ask you to go over the essential terms of the

2   plea agreement.

3           MR. WILLIAMS:  Yes, Your Honor.  As Your Honor noted,

4   this is an 11(c)(1)(C) binding plea agreement.  And that's

5   specified in Paragraph 2 of the agreement.  The agreement

6   obligates Monsanto Company to plead guilty as to Count 3 of the

7   information.  As part of that the defendant would be giving up

8   the right to indictment.

9           In addition, this particular plea agreement

10  incorporates the provisions of the deferred prosecution

11  agreement as well.

12          Reading from Paragraph 12, Your Honor, which are kind

13  of the core terms of the plea agreement, the parties are

14  agreeing that the defendant shall be sentenced to a two-year

15  term of probation with conditions to be fixed by the Court,

16  including but not limited to the conditions attached to this

17  plea agreement as Exhibit C.

18          There's a criminal fine component of $200,000, which

19  is the statutory maximum fine for this particular violation,

20  which is Count 3 of the information, the FIFRA violation, Your

21  Honor.

22          Community service payments are required as a condition

23  of probation in the amount of $4 million.  Those are laid out

24  in Exhibit C.  And those community service payments are going

25  to various government entities which are set forth in that

1    exhibit.

2         There's a special assessment of $125.  And as I

3    indicated, the defendant is also required to comply with the

4    terms of the deferred prosecution agreement.

5         The defendant would be waiving certain rights if the

6    Court accepts this agreement and the defendant pleads guilty,

7    with the exception of an appeal based on a claim that the

8    guilty plea was involuntary.  The defendant would be giving up

9    the right to appeal the conviction on which they'd be pleading

10   guilty.  They'd also be giving up the right to appeal the

11   sentence if the Court goes along with the 11(c)(1)(C) agreement

12   and the terms that I previously laid out.

13        And I believe those are the essential terms unless

14   Your Honor would like me to put anything else on the record.

15        THE COURT:  Well, I think the waiver of the statute of

16   limitations maybe.

17        MR. WILLIAMS:  Yes, Your Honor.  That's on Page 9,

18   Paragraph 14.  The defendant would be waiving and giving up any

19   right that the defendant has not to be prosecuted for the

20   offense that they're pleading guilty to, which is Count 3,

21   because of the expiration of the statute of limitations; and B,

22   any defense, claim or argument that the defendant could raise

23   or assert that the prosecution for that particular offense to

24   which they're pleading guilty is barred by the expiration of

25   the statute of limitations, Your Honor.

```
 1              THE COURT:  All right.  Thank you.  Mr. Harstad, do
 2      you have anything to add to that or do you agree with that
 3      recitation of the essential terms of the plea agreement?
 4              MR. HARSTAD:  Your Honor, I agree with the essential
 5      terms as stated by the prosecution.
 6              THE COURT:  All right.  Ms. Shaffer, do you have
 7      any -- is there anything you didn't understand, let me ask you
 8      first of all, as to what was just said?
 9              MS. SHAFFER:  No.
10              THE COURT:  Okay.  Do you have anything you want to
11      add?
12              MS. SHAFFER:  No, I do not.
13              THE COURT:  Okay.  Let me go over a couple of these
14      things with you to make sure --
15              MS. SHAFFER:  Okay.
16              THE COURT:  -- we're on the same page.  Okay?
17              First, Monsanto is giving up its right to appeal this
18      conviction other than a claim that the plea was somehow
19      involuntary; do you understand that?
20              MS. SHAFFER:  I do.
21              THE COURT:  Do you also understand that if I sentence
22      according to the 11(c)(1)(C) agreement, in other words, if I
23      adopt the recommendations made in this binding plea agreement,
24      neither you nor the government will be able to appeal the
25      sentence; do you understand that?
```

1          MS. SHAFFER:  I do understand that.

2          THE COURT:  And when I say "you" I mean Monsanto.

3          MS. SHAFFER:  Yes.

4          THE COURT:  Yes.  Okay.  Now, just looking at this it

5    appears that perhaps, and I don't know for sure, that there

6    would be a statute of limitations defense that could be brought

7    as to Count 3.  But regardless of whether I'm right about that

8    or not, do you understand that through this plea agreement

9    Monsanto is waiving or giving up its right to allege in any

10   way, it appears to me, any claim regarding a statute of

11   limitations, which would be an affirmative defense; do you

12   understand that?

13         MS. SHAFFER:  We do understand that.

14         THE COURT:  All right.  All right.  So let me go over

15   some important rights now that Monsanto gives up by entering a

16   plea of guilty.

17         Now, this is a full misdemeanor, so there would be an

18   entitlement to trial by jury; do I have that right?

19         MR. WILLIAMS:  Yes, Your Honor.  It's a Class A

20   misdemeanor.

21         THE COURT:  Takes a petty misdemeanor not to have a

22   right, correct?  Which would be six months or under six months?

23         MR. WILLIAMS:  Correct, Your Honor.

24         THE COURT:  Do I have that right?  Okay.  All right.

25         So do you understand under the Constitution and laws

1   of the United States, Monsanto has the right to plead not

2   guilty and is entitled to a trial by jury on the charge set

3   forth in Count 3?

4           MS. SHAFFER:  Yes.

5           THE COURT:  Do you understand that at trial Monsanto

6   would be presumed innocent and the government would have the

7   burden to present evidence to prove its guilt beyond a

8   reasonable doubt?

9           MS. SHAFFER:  Yes, sir.

10          THE COURT:  And at no time would Monsanto have the

11  burden to prove that it's not guilty, the burden always rests

12  with the government to prove guilt, if it can do so beyond a

13  reasonable doubt; do you understand that?

14          MS. SHAFFER:  I do, sir.

15          THE COURT:  To be found guilty a jury of 12 impartial

16  citizens would have to be in unanimous agreement as to guilt

17  beyond a reasonable doubt; do you understand that?

18          MS. SHAFFER:  I do.

19          THE COURT:  At all stages of the prosecution,

20  including trial, Monsanto would have the right to effective

21  assistance of counsel for its defense; do you understand that?

22          MS. SHAFFER:  Yes.

23          THE COURT:  Now, at trial you or another

24  representative of Monsanto would have the right to see and hear

25  all the government witnesses and have those witnesses

1    questioned or cross-examined by counsel.  Do you understand

2    that?

3              MS. SHAFFER:  Yes.

4              THE COURT:  And Monsanto could object to evidence

5    offered by the government and could, although it's not required

6    to do so, evidence -- I'm sorry, offer evidence on its own

7    behalf and force or compel witnesses to appear in court to

8    testify using the Court's subpoena power; do you understand all

9    that?

10             MS. SHAFFER:  Yes.

11             THE COURT:  Do you understand that by entering a plea

12   of guilty, if I accept the plea, there will be no trial and

13   Monsanto will have waived or given up the right to a trial and

14   all these other rights that we just discussed; do you

15   understand that?

16             MS. SHAFFER:  Yes, sir.

17             THE COURT:  Do you have any questions regarding these

18   rights?

19             MS. SHAFFER:  No, sir.

20             THE COURT:  Do you also understand that various

21   officers of Monsanto or employees would have the right to

22   testify at trial if they chose to do so?

23             MS. SHAFFER:  I do.

24             THE COURT:  Okay.  All right.  So knowing all of these

25   rights does Monsanto still wish, through, again, your

1   authorization, to go forward with the plea of guilty?

2          MS. SHAFFER:  Yes, Your Honor.

3          THE COURT:  All right.  So normally this is where I go

4   through a lot of information about the sentencing guidelines,

5   but I don't think that's necessary with the (c)(1)(C)

6   agreement.  Does counsel disagree with?

7          MR. WILLIAMS:  I don't disagree with that, Your Honor.

8          MR. HARSTAD:  I don't believe so, Your Honor.

9          THE COURT:  All right.  So again, this is an

10  11(c)(1)(C) plea agreement, which they're uncommon, I would

11  say, not rare but uncommon, and Monsanto will be bound by its

12  terms.  That is, if I accept the recommendation, Monsanto will

13  be bound by that; do you understand that?

14         MS. SHAFFER:  I do.

15         THE COURT:  All right.  All right.  I now need to -- I

16  want to turn to the facts of the matter.  And I'm going to turn

17  to government counsel and ask government counsel to provide an

18  overview of the evidence he believes the United States could

19  present at a trial as to Count 3.  Ms. Shaffer, I want you to

20  listen carefully because when he's done I'm going to ask you if

21  you agree or disagree in whole or in part with what he stated.

22  Okay?

23         MR. WILLIAMS:  Yes, Your Honor, if this case were to

24  proceed to trial the government would prove the following facts

25  beyond a reasonable doubt, and I'm summarizing Exhibit B to

1   both the plea agreement and the deferred prosecution agreement,

2   it's the same factual basis, Your Honor.

3        Monsanto is a multinational business that operates

4   several locations in Hawaii, including locations on Maui,

5   Molokai and Oahu.

6        As part of Monsanto's operations, Monsanto employees

7   purchase and spray restricted use pesticides on seed crops.

8        Under the Federal Insecticide, Fungicide, and

9   Rodenticide Act, those pesticide -- that Act regulates the

10   registration, sale and distribution of pesticides.  A

11   restricted use pesticide under FIFRA is a pesticide that could

12   not be purchased or used by the general public and could only

13   be used by a certified applicator due to the possible adverse

14   effects to the environment and injury to applicators that could

15   result.

16        And for years Monsanto sprayed and stored Penncap-M,

17   which is a restricted use pesticide, and it contained parathion

18   as the sole active ingredient.  And it used that on its

19   research on seed crops on Oahu, Maui and Molokai.

20        In March 2010, however, two manufacturers of Penncap-M

21   sought the voluntary cancellation for Penncap-M's FIFRA

22   registration.  And subsequently in July of 2010 the

23   Environmental Protection Agency issued a cancellation order for

24   Penncap-M that cancelled the FIFRA registration and

25   subsequently prohibited the use of all existing stocks of

1    Penncap-M.

2           In addition to publishing notices about that

3    cancellation order, the EPA also sent a listserv e-mail out

4    regarding that that Monsanto received.  And Monsanto's

5    compliance department received that e-mail on April 2010

6    announcing the ban of Penncap-M.

7           Due to the ban on Penncap-M, Your Honor, knowingly

8    spraying Penncap-M on any of Monsanto's seed crop fields after

9    December 31st of 2013, would constitute a violation of FIFRA.

10          On July 15, 2014, after Monsanto employees had been

11   notified of the stop use date, a Monsanto employee knowingly

12   sprayed Penncap-M on two acres of corn seed research crops at

13   its Valley Farm location on Maui.  At the time of the spraying,

14   Monsanto was aware that years early -- earlier, the reentry

15   interval, which is the time period that has to elapse before

16   workers can re-enter a field that was sprayed by Penncap-M, had

17   been increased from five to 31 days.  Nonetheless, Monsanto

18   sent its employees back into the field seven days after the

19   Penncap-M had been sprayed.

20          The factual basis also contains information, Your

21   Honor, relating to the RCRA violations in the deferred

22   prosecution agreement, but I won't summarize that at this

23   point.

24          THE COURT:  All right.  Then why don't we do this, why

25   don't you go ahead and cover the elements then.  I think it's

1   set forth in the paperwork, but why don't you on the record put

2   on the elements of the 136j violation.

3           MR. WILLIAMS:  Yes, Your Honor.  In order to prove a

4   violation of 7, United States Code, 136j(a)(2)(K) and

5   136l(b)(1)(B), the government would have to prove that

6   defendant, a commercial applicator of a restricted use

7   pesticide, knowingly sprayed a restricted use pesticide that

8   had been banned by the Environmental Protection Agency pursuant

9   to a cancellation order.

10          THE COURT:  All right.  So, first of all, counsel, do

11  you agree with those essential elements of the offense?

12          MR. HARSTAD:  Correct, Your Honor, we do.

13          THE COURT:  All right.  And, Ms. Shaffer, you

14  understand those?

15          MS. SHAFFER:  I do.

16          THE COURT:  As far as the factual basis that was just

17  discussed by Mr. Mitchell, is everything he said true and

18  correct based on your investigation and your understanding of

19  the facts regarding what transpired?

20          MS. SHAFFER:  Can I have a sidebar with my counsel?

21          THE COURT:  You may, yes.  Sure.

22          MS. SHAFFER:  Okay.

23          THE COURT:  Just stand away from the mics or push down

24  on the mic so the green light goes off, one of the two.  Okay.

25                  (Pause in the proceedings.)

1          THE COURT:  All right.  First of all, have you had a
2    full opportunity then to consult with counsel?
3          MS. SHAFFER:  We have -- we do -- I do, Your Honor.
4          THE COURT:  Okay.  So, my question was, is everything
5    that was stated true and correct?
6          MR. HARSTAD:  We just wanted to point out one -- one
7    thing, and it is in the factual basis, that is Exhibit B
8    attached to the plea agreement.  And it's at the top of Page 2.
9    It said the prohibition of all use of existing stocks of
10   end-use Penncap-M was as of December 31st, 2013.  I think that
11   was just left out of the government's recitation of the facts,
12   but we just wanted to make that clear.
13         THE COURT:  Because that was -- that was sort of the
14   drop-dead date, December 31st, 2013?
15         MR. HARSTAD:  Yes, Your Honor.
16         THE COURT:  Okay.  All right.  And you don't disagree
17   with that, I assume?  It's in the --
18         MR. WILLIAMS:  We agree with that, Your Honor.  Yes.
19         THE COURT:  Okay.  All right.  So, Ms. Shaffer, tell
20   me in your own words what did Monsanto do that makes it guilty
21   of this -- of this Count 3?
22         MS. SHAFFER:  Well, in March of 2010 the two
23   manufacturers of Penncap-M asked for -- asked -- requested a
24   VPA, a voluntary cancellation of the registrations for their
25   Penncap-M products.  And then in July of 2010 EPA agreed to

1    cancel the registrations and sent a notice out in the federal

2    register, published in the federal register and also sent this

3    notice in a listserv, to a listserv, e-mail listserv.  At least

4    one employee at Monsanto received that e-mail.  Knowledge came

5    into the company of the cancellation.

6              In July of 2014 one of our crews applied methyl

7    parathion to a field in -- on Maui.

8              THE COURT:  Okay.  So you agree, first of all, that

9    Monsanto as of that date was a commercial applicator as

10   required by the statute?

11             MS. SHAFFER:  Yes.

12             THE COURT:  Of a restricted use pesticide?

13             MS. SHAFFER:  Yes.

14             THE COURT:  That's what the --

15             MS. SHAFFER:  The company was, Your Honor.

16             THE COURT:  The company was, right.  Okay.  And that

17   somebody on behalf of Monsanto knowingly sprayed a restricted

18   use pesticide, in this case it was the Penncap-M, after it was

19   prohibited from being used as of December 31, 2013; is that

20   accurate?

21             MS. SHAFFER:  The company knowingly sprayed the

22   chemical in July of 2013.

23             THE COURT:  Okay.  But, you know, Monsanto doesn't go

24   around the field, right?  There is no such thing.  Somebody --

25   an employee on behalf of Monsanto did that.

1          MS. SHAFFER:  Yes, Your Honor, I agree with that

2    statement.

3          THE COURT:  Okay.  After December 31st it 2013,

4    that -- that is --

5          MS. SHAFFER:  Yes.

6          THE COURT.  The date was July 2014, right?

7          MS. SHAFFER:  Yes, Your Honor.

8          THE COURT:  July 15, 2014.

9          MS. SHAFFER:  Mm-hmm.

10         THE COURT:  Okay.  So it was knowingly sprayed.  In

11   other words, they knew what they were spraying, whoever did it;

12   is that accurate?

13         MS. SHAFFER:  We do not have information suggesting

14   that the individual who sprayed the methyl parathion had

15   knowledge, had actual knowledge of the registration status of

16   the chemistry that he was applying.

17         THE COURT:  No, but did he know what he was spraying?

18         MS. SHAFFER:  He knew he was applying methyl

19   parathion, yes.

20         THE COURT:  Penncap-M, right?

21         MS. SHAFFER:  Yes.

22         THE COURT:  Okay.  And Monsanto likewise, through this

23   listserv e-mail and notice, somebody at Monsanto in an

24   appropriate position, meaning somebody who should have been

25   able to get word out to others, knew regarding -- knew about

 1   the ban; is that accurate?

 2            MS. SHAFFER:  That is accurate.

 3            THE COURT:  Okay.  We won't get into what broke down,

 4   but something broke down to where this employee sprayed the

 5   Penncap-M.

 6            MS. SHAFFER:  Correct, Your Honor.

 7            THE COURT:  Right?  I don't think it matters whether

 8   they knew -- that employee knew of the violation or not, is my

 9   belief, but I just wanted to check with counsel.

10            MR. WILLIAMS:  That's correct, Your Honor.  It's a

11   general intent crime.  There's no willfulness required.

12            THE COURT:  So they had to know they were spraying

13   Penncap-M, right?

14            MR. WILLIAMS:  Correct.

15            THE COURT:  And is it your view Monsanto didn't even

16   have to know it was banned, is that your view?

17            MR. WILLIAMS:  No, our view is Monsanto did know it

18   was banned, Your Honor.  So --

19            THE COURT:  So that's enough anyways?

20            MR. WILLIAMS:  Yes, Your Honor.

21            THE COURT:  Okay.  All right.  Okay.  And I don't

22   think I need to get into the five-day versus 35 days and so

23   forth.  I don't think that's really part of the elements of the

24   offense here.

25            Do both counsel concur that the admissions made by

1    Ms. Shaffer on behalf of Monsanto are sufficient for a factual

2    basis to prove each essential element of the offense?

3              MR. WILLIAMS:  Yes, for the government, Your Honor.

4              MR. HARSTAD:  Yes, on behalf of Monsanto.

5              THE COURT:  And you've read the entirety of Exhibit B?

6              MS. SHAFFER:  I have, Your Honor.

7              THE COURT:  I assume that was negotiated?

8              MS. SHAFFER:  It was.

9              THE COURT:  Okay.  And I assume you agree that the

10   facts set forth in Exhibit B are true and correct?

11             MS. SHAFFER:  I do.

12             THE COURT:  Okay.  All right.  And you don't have any

13   reason to question the facts set forth there, correct?

14             MS. SHAFFER:  I do not.

15             THE COURT:  All right.  Is there anything else, I

16   don't take corporate pleas that often, so I want to make sure

17   there's nothing else I need to cover here before I take the

18   plea and we move on to the question of sentencing.

19   Mr. Harstad?

20             MR. HARSTAD:  Not from Monsanto's perspective, Your

21   Honor.

22             THE COURT:  What about Mr. Mitchell or Mr. Williams,

23   did I cover everything you think I need to cover?  Is there

24   anything --

25             MR. WILLIAMS:  Your Honor, that's sufficient for my

1    purposes.  I would just ask that the plea agreement be

2    incorporated into the record, Your Honor, if that's part of

3    your normal practice.

4            THE COURT:  Well, it should be filed.  I don't know --

5    I think it has been filed.

6            MR. WILLIAMS:  Okay.  Thank you, Your Honor.

7            THE COURT:  Yeah, it's document number three.

8            MR. WILLIAMS:  That's fine, Your Honor.  Thank you.

9            THE COURT:  Okay.  All right.  So, ma'am, on behalf of

10   Monsanto, how does Monsanto plead as to Count 3 of the

11   information, guilty or not guilty?

12           MS. SHAFFER:  Guilty.

13           THE COURT:  All right.  So, it is the finding of the

14   Court that Ms. Shaffer has the appropriate authorization to

15   enter a plea on behalf of Monsanto.  That she is competent to

16   understand the proceedings and to enter a knowing and informed

17   plea.  She understands the charge, that is Count 3, to which

18   Monsanto is pleading.  The plea is knowing and voluntary and

19   not based on any force or threat and is not based on any

20   promise other than what is specifically set forth in the plea

21   agreement and the DPA.

22           The plea is supported by an independent basis in fact

23   containing each essential element.  Ms. Shaffer understands

24   her -- Monsanto's rights associated with a trial and the nature

25   of the offense and the maximum possible punishment.  And I will

1  accept the guilty plea and adjudge Monsanto guilty.

2          Now I think we can turn to the question of sentencing.

3  So I don't know who wants to speak first on that.  If you folks

4  want to go back, you can, to the counsel table.

5          MS. SHAFFER:  Thank you, Your Honor.

6          THE COURT:  And the check should be made payable to

7  Clerk, comma, U.S. District Court.

8          MR. HARSTAD:  Thank you, Your Honor.

9          THE COURT:  All right.  So the agreement is two years

10  of probation.  The 400 -- well, there's five different

11  entities.  800,000 each.

12          What is the law on the sort of nexus required for

13  community service payments to the offense conduct?  Is there a

14  doctrine, is it all similar to sort of the cy pres doctrine?

15  Is there such requirement?  And I'm not really looking to

16  second-guess this, I'm just sort of interested to know where

17  that stands and --

18          MR. MITCHELL:  Well, Your Honor, we can inform the

19  Court that community service payments --

20          THE COURT:  Get closer to the mic.  Yes.

21          MR. MITCHELL:  Excuse me.  Community service payments

22  have been used by the Department of Justice as part of a

23  sentence.  And in this case this was actually something that

24  defendant Monsanto Company requested.  We were willing to go

25  along with it.  One thing the Department of Justice has

```
 1   restricted most recently is that these payments be made to
 2   government service organizations.  In this case we selected
 3   five different organizations that deal with the environment in
 4   Hawaii and also almost all of them have some effect on
 5   environmental matters in Maui itself.  They all have various
 6   goals.
 7             THE COURT:  That's what I'm getting at really is,
 8   is -- look, I mean I could ask for you folks to write up
 9   whether community service payments are appropriate or not at
10   all, but I don't intend to do that.  Everyone here is grown up,
11   everyone has entered into this agreement with open eyes and I
12   don't have a problem with it.
13             I do think, however, what you're getting at is sort of
14   this cy pres doctrine, I don't know if you're familiar with
15   that or not, but it deals with class action settlements.  When
16   there's sort of leftover money, oftentimes it goes to a charity
17   of some sort.  But the courts have been pretty critical if it's
18   not really tied into the harm caused by the events giving rise
19   to the class action.  So there has to be that sort of nexus,
20   that tie-in between the harm caused and the monies.
21             Now, a difference here perhaps is at least four of
22   these are certainly government entities.  I don't know about
23   the Kahoolawe Island Reserve Commission.  Is that a State of
24   Hawaii --
25             MR. MITCHELL:  Yes, we also understand that is also a
```

1   government service organization as well.  It's not private.

2           THE COURT:  Okay.

3           MR. MITCHELL:  That's something we checked with our

4   agents to make sure before we put it on the list.

5           THE COURT:  All right.  And all of these entities have

6   agreed to take the money?

7           MR. MITCHELL:  Yes, Your Honor.  We actually contacted

8   all of them with -- we didn't say it was a sure bet because it

9   was all subject to court approval, but they were all informed

10  and none of them objected.

11          THE COURT:  Okay.  But you're telling me at least,

12  based on what you said, you tried to get sort of Maui centric

13  and at the same time to causes that would further protect the

14  environment, not necessarily in relation to pesticides but

15  nonetheless protect the environment in that geographic area; is

16  that a fair statement?

17          MR. MITCHELL:  Yes.  And some actually do address and

18  get into the area of pesticides, at least one and two.  But

19  yes, they're all environmentally related.  Probably the most

20  distant one would be for the island of Kahoolawe because it's

21  not dealing with pesticides there, rather it's exploded and

22  unexploded ordinance and so forth.

23          But my understanding from one of the case agents as

24  well is that culturally speaking, that island is very tied into

25  the cultural life of Maui as well.  So there does seem to be a

1    deeper connection there than perhaps between Kahoolawe and

2    other islands.  So we were, you know, pleased to hear that as

3    well.

4            THE COURT:  I don't doubt that.

5            Mr. Harstad, do you have anything to add to that?

6            MR. HARSTAD:  My understanding is, and I may have to

7    defer to Ms. Fisher here, but my understanding is that the --

8    the -- I guess the five entities were chosen by the government

9    at Monsanto's request and as part of the negotiation process,

10   Your Honor.

11           THE COURT:  All right.  Ms. Fisher, do you have

12   anything to add?

13           MS. FISHER:  No, Your Honor.

14           THE COURT:  All right.  So let me hear from the

15   defense then.  So two years of probation, $200,000 fine, which

16   is the maximum, and then these $4 million payments, plus the

17   conditions of probation set forth after that on Exhibit C,

18   which includes the development and implementation of a

19   compliance program.

20           MR. HARSTAD:  That's correct, Your Honor.  And --

21           THE COURT:  That's sort of the most meaty part of

22   what's required here.

23           MR. HARSTAD:  Yeah, and then that would be a program

24   that would be subject to audit by an external environmental

25   auditor to be selected, I believe within 30 days of sentencing.

1    And that would be part of Monsanto showing its -- basically its

2    good faith and it's trying to resolve the issue here, Your

3    Honor.

4            THE COURT:  Does that -- I had one question.  Does

5    that third-party environmental compliance auditor, the

6    environmental auditor have to be approved by the government?  I

7    don't think it says this here, but normally I see in these

8    agreements a provision that requires the government to agree to

9    the person, and if that can't be decided, the Court would

10   ultimately make that determination, but it's --

11           MR. WILLIAMS:  Your Honor, we put in the language

12   "qualified and experienced."  So those would be obvious

13   prerequisites.  And if the person didn't have those

14   prerequisites, then that would be something the government

15   would raise with the defendant.  But it's not -- there's not --

16           THE COURT:  But ultimately it's their decision who's

17   qualified and experienced, not yours.

18           MR. WILLIAMS:  I suppose in --

19           THE COURT:  The way this is written.

20           MR. WILLIAMS:  In some ways that's correct, Your

21   Honor, but in other ways if we're going to allege some breach

22   of the agreement because they didn't retain an experienced

23   person, I think we would be authorized to do that under certain

24   circumstances.

25           THE COURT:  Is there a problem if I require everyone

1    to reach agreement on this?

2            MS. FISHER:  No, Your Honor.  We fully intend to tell

3    the government who we decide to pick for the external monitor

4    and we'll go through a RFP process to determine somebody that

5    is experienced.

6            MR. WILLIAMS:  That's fine from the government's

7    perspective too, Your Honor.

8            THE COURT:  Okay.  I just think it's best if the

9    government has the ability to say no.  I have no reason to

10   doubt Monsanto's good faith on this and that somebody who's

11   qualified, especially if they go through a request for

12   proposal, sounds like they wouldn't even handpick somebody, so.

13   And they must know people who do this.  And therefore could --

14   okay.  So I'm thinking that one little change might be

15   appropriate.  It sounds like that's not a problem.

16           Is there anything else then that anyone wants to raise

17   as to whether I should accept the (c)(1)(C) and/or whether I

18   should go forward with sentencing now?

19           MR. HARSTAD:  Your Honor, we would ask that the Court

20   both accept the (c)(1)(C) and go forward with sentencing now.

21   We think it's -- Monsanto's paying the maximum statutory fine,

22   $200,000, in addition to the $4 million in community service

23   payments, as well as implementing and developing its

24   comprehensive environmental compliance program.

25           I just want to note one -- I did misspeak when we were

1    talking, I looked, it says the compliance program will be

2    implemented within 90 calendar days of the date Monsanto is

3    sentenced, Your Honor.  I just wanted to correct the record on

4    that.

5              THE COURT:  Okay.  Okay.

6              MR. WILLIAMS:  Nothing further from the government,

7    Your Honor.

8              THE COURT:  I mean are you agnostic on this going

9    forward right now or are you in favor --

10             MR. WILLIAMS:  I have no objection, Your Honor.  I

11   think it's most efficient.  It sounds like the Court has a very

12   good understanding of the various documents --

13             THE COURT:  You want another trip back to Hawaii?

14             MR. WILLIAMS:  If the Court wanted to continue

15   sentencing, I wouldn't object to that either, Your Honor.

16             THE COURT:  Yeah.  All right.  Well, so I've looked at

17   this carefully.  Like I say, I had to actually study it.  I

18   mean I read it and was a little confused at first because, like

19   I say, I've never seen this sort of tie-in like this quite

20   before.  And maybe it's common, I just haven't seen it.  And so

21   I had to sort of understand and work on understanding what my

22   role was and I'm glad I essentially got it right.

23             And I accept the 11(c)(1)(C) agreement.  I think this

24   was, number one, a fully negotiated arm's length agreement.

25   The fact that there are -- is a requirement of 400 million

1   community service agreements reflects, I think, the seriousness
2   of the conduct, but at the same time Monsanto's good will in
3   entering into these discussions and negotiations and wanting to
4   resolve this matter in a meaningful way to the benefit of the
5   United States, Monsanto but more importantly the public from my
6   perspective as far as what we're doing here today.
7           If I had my say I might say three years of probation,
8   I might say a little bit more, but, you know, that's not enough
9   for me to reject the (c)(1)(C).  So I do accept the (c)(1)(C).
10          I've talked to my probation office.  I've shared these
11  documents with them.  They see no reason to get involved with
12  this and I don't see that as well in this case.  So, I see no
13  problem with going forward with sentencing now.  And I intend
14  to impose a sentence as stated -- I mean as agreed to.  The
15  only thing I might add, and I assume there wouldn't be any
16  problems with this, a standard condition we have, which is the
17  defendant shall answer truthfully all inquiries by the
18  probation office and follow all instructions of the probation
19  office.  I assume there would be no objection to that.
20          MS. FISHER:  No objection, Your Honor.
21          THE COURT:  Right.  Okay.
22          MR. WILLIAMS:  No objection, Your Honor.
23          THE COURT:  All right.  So, that would be my intent.
24  Of course you folks have a right to allocution and I'm happy to
25  hear both from counsel and from Ms. Shaffer on behalf of

1    Monsanto if she wishes to speak as well before I do impose

2    sentence.  So --

3              MR. WILLIAMS:  Your Honor, nothing further from the

4    government.  It's clear from the record that Your Honor has a

5    very good understanding of the documents and we're happy to

6    proceed with sentencing at this time.

7              THE COURT:  All right.  Mr. Harstad?

8              MR. HARSTAD:  Your Honor, nothing further from

9    counsel.

10             MS. SHAFFER:  No, and I'd just like to say we regret

11   this has happened and thank you, Your Honor.

12             THE COURT:  All right.  Okay.  So, Ms. Shaffer, if you

13   can stand please, then I will impose sentence as follows:

14             And that is a period of probation of two years and a

15   fine of $200,000.  A special assessment of 125; is that right?

16             MR. WILLIAMS:  That's correct, Your Honor.

17             THE COURT:  125.  And then as a condition of probation

18   I'll get to in a minute, community service payments of

19   $4 million.  And then the following conditions as are set forth

20   on Exhibit C.  That is, Monsanto must satisfy community service

21   payments, a total of $4 million, to the following entities:

22             800,000 to the Hawaii Department of Agriculture for

23   use by that department to create and fund a Pesticide Disposal

24   Program and for training and education purposes.

25             800,000 to the Hawaii Department of Land and Natural

1   Resources, Maui Division of Aquatic Resources, for use by the

2   DLNR in its marine programs.

3            800,000 to the Hawaii Department of Health Hazardous

4   Waste Branch for its use in training and education.

5            $800,000 to the Hawaii Department of Health,

6   Environmental Management Division for its use for water quality

7   monitoring, water quality improvement purposes, and training

8   and education purposes.

9            And 800,000 to the Kahoolawe Island Reserve Commission

10  for its use in cleanup of the island.

11           Monsanto shall develop, maintain and implement a

12  comprehensive environmental compliance program for compliance

13  with the Resource Conservation and Recovery Act and the Federal

14  Insecticide, Fungicide, and Rodenticide Act at all of its

15  Hawaii sites.  This shall be implemented within 90 calendar

16  days from today and shall include Monsanto's retention of a

17  qualified and experienced third-party environmental compliance

18  auditor agreed to by the government -- we'll just add that in

19  there -- that is not affiliated with defendant to conduct

20  audits every six months of all of defendant's locations in

21  Hawaii in order to determine whether or not defendant is in

22  full compliance with RCRA and FIFRA.  The audits shall not take

23  any longer than approximately one week per site; however, the

24  auditor may take additional time as reasonably necessary.

25  Monsanto will fully cooperate in these audits, including

1   promptly providing access to its facilities, employees and

2   documentation.  The environmental auditor shall promptly

3   provide a comprehensive written report of each audit to

4   Monsanto, the United States Attorney's Office, in this case

5   that means the central district, right, not here, and the

6   United States probation officer, which will be here.

7           And the environmental auditor shall cooperate fully in

8   responding to questions from defendant, the probation officer

9   or the USAO, the United States Attorney's Office, regarding its

10  audits and/or written reports.

11          To the extent the environmental auditor identifies any

12  violations that do not constitute criminal violations or the

13  need for compliance enhancements, Monsanto shall have 30 days

14  to cure such violations and/or apply such compliance

15  enhancements before any breach of the plea agreement is

16  declared.

17          Monsanto shall not commit a federal felony or

18  misdemeanor offense or state felony offense, including but not

19  limited to violations of RCRA and FIFRA and shall immediately

20  notify the United States Attorney's Office and probation office

21  if such a crime is committed.

22          Within 30 days of the sentencing hearing, again,

23  today, defendant shall designate an official of the

24  organization to act as the organization's representative and to

25  be the primary contact with the probation officer.

1          Defendant Monsanto shall notify the Court through

2    Probation and the United States Attorney's Office promptly upon

3    learning of any material adverse change in its business or

4    financial conditions or prospects, the commencement of any

5    bankruptcy proceedings or criminal prosecution against

6    Monsanto, or the commencement of any major civil litigation,

7    administrative proceeding or any investigation or formal

8    inquiry by government authorities regarding defendant that

9    impacts defendant's ability to perform any conditions of

10   probation.

11          Monsanto shall answer truthfully all inquiries by the

12   probation office and follow the instructions of the probation

13   office.

14          So that was already in there actually.  I didn't see

15   that earlier.  Okay.

16          Defendant shall notify the United States Attorney's

17   Office and the probation officer of any change in its principal

18   business or mailing address ten days prior to such a change or

19   within 72 hours if advance notice is not possible.

20          Defendant shall permit a probation officer to visit

21   any of Monsanto's locations.

22          Defendant shall provide reasonably prompt notice to

23   the probation officer and the U.S. Attorney's Office of any

24   sale of the defendant, change in defendant's name, merger of

25   defendant with another business entity or otherwise any change

1   to defendant's organizational structure that impacts its

2   ability to perform any condition of probation.

3            And as part of probation the defendant shall comply

4   with all terms of the parties' deferred prosecution agreement

5   and plea agreement.

6            All right.  So, first of all, did I cover everything

7   that was required by the (C) agreement?

8            MR. WILLIAMS:  Yes, Your Honor.

9            MR. HARSTAD:  Yes, Your Honor.

10           THE COURT:  Are there any legal objections to the

11   intended sentence as stated?

12           MR. WILLIAMS:  Nothing from the government, Your

13   Honor.

14           MR. HARSTAD:  Not from Monsanto, Your Honor.

15           THE COURT:  The Court does impose sentence as stated.

16           Ms. Shaffer, given the plea agreement here, Monsanto

17   has waived its right to appeal, but if Monsanto believes that

18   waiver is not enforceable or somehow there's something that

19   wasn't waived, a Notice of Appeal must be filed within 14 days

20   of entry of judgment.  Failure to file a Notice of Appeal

21   within that 14 days acts as a waiver, meaning Monsanto forever

22   gives up its right to appeal.  Do you understand that?

23           MS. SHAFFER:  I do, Your Honor.

24           THE COURT:  All right.  Anything else, counsel, or

25   does that cover it?

1          MR. WILLIAMS:  One remaining thing, Your Honor.

2    Pursuant to the deferred prosecution agreement we had lodged a

3    stipulation of proposed order for the Court pushing out that

4    trial date, Your Honor.

5          THE COURT:  Right.  So -- so, again, you know, based

6    on my research, my sole obligation here is to confirm that that

7    is a good faith stipulation entered into because of a bona fide

8    deferred prosecution agreement and I so find and will sign off

9    on the -- on the order that accompanied the stipulation.  I

10   don't have that with me, but I'll do that and get that filed.

11         MR. WILLIAMS:  Thank you, Your Honor.

12         MR. MITCHELL:  Thank you, Your Honor.

13         THE COURT:  Okay.  Anything else then?  Mr. Harstad?

14         MR. HARSTAD:  Not from Monsanto.

15         MR. WILLIAMS:  Nothing from the government, Your

16   Honor.

17         THE COURT:  All right.  Thank you all very much.  I

18   appreciate it.

19         MR. WILLIAMS:  Thank you, Your Honor.

20         MR. HARSTAD:  Thank you, Your Honor.

21         MR. MITCHELL:  Thank you, Your Honor.

22         MS. SHAFFER:  Thank you, Your Honor.

23         MS. FISHER:  Thank you.

24         (The proceedings concluded at 3:59 p.m., December 16,

25   2019.)

1                    COURT REPORTER'S CERTIFICATE

2

3          I, CYNTHIA FAZIO, Official Court Reporter, United

4     States District Court, District of Hawaii, do hereby certify

5     that pursuant to 28 U.S.C. §753 the foregoing pages is a

6     complete, true, and correct transcript of the stenographically

7     reported proceedings held in the above-entitled matter and that

8     the transcript page format is in conformance with the

9     regulations of the Judicial Conference of the United States.

10          DATED at Honolulu, Hawaii, December 20, 2019.

11

12

13                    */s/ Cynthia Fazio*
                      CYNTHIA FAZIO, RMR, CRR, CRC
14

15

16

17

18

19

20

21

22

23

24

25